# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ULTIMATE ESCAPES HOLDINGS, LLC, *et al.*,[1] | Case No. 10-12915 ( ) |
| Debtors. | (Joint Administration Requested) |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING THE MAINTENANCE OF BANK ACCOUNTS AND CONTINUED USE OF EXISTING BUSINESS FORMS AND CHECKS, (B) AUTHORIZING THE CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (C) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POST-PETITION INTERCOMPANY CLAIMS, AND (D) WAIVING CERTAIN INVESTMENT AND DEPOSIT GUIDELINES

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby move the Court (the "**Motion**") pursuant to sections 105, 345(b), 363 and 553 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order: (a) authorizing the maintenance of bank accounts and continued use of existing business forms and checks; (b) authorizing but not directing continued use of existing cash management system; (c) granting administrative expense status to post-petition intercompany claims; and (d) waiving certain investment and deposit guidelines of section 345 of the Bankruptcy Code and of the Office of the United States Trustee (the "**Guidelines**") on an interim basis; and providing any additional relief required in order to effectuate the foregoing. In support of this Motion, the Debtors respectfully state as follows:

### Status of the Case and Jurisdiction

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as **Schedule "1"**.

1.  On the date hereof (the "**Petition Date**"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "**Cases**").

2.  The Debtors have continued in possession of their properties and are operating and managing their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.  No request has been made for the appointment of a trustee or examiner, and a creditors' committee has not yet been appointed in these Cases.

4.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5.  The statutory bases for the relief requested herein are sections 105(a), 345(b), 363 and 553 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Rules 2015-2(a) and (b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

## Background

6.  The Debtors are one of the largest operators in the high-end luxury destination club industry. The Debtors provide club members and their families with flexible access to a portfolio of multi-million dollar club residences, exclusive member services and resort amenities. The Debtors operated prepetition over 119 luxury club residences in various global destinations, including throughout the United States, Mexico, Central America, the Caribbean and Europe. The Debtors also provide their members with preferred access to four and five-star hotel properties and resorts. The Debtors derive their revenue from the sale of one-time club membership fees, annual dues and additional use fees or other charges related to upgrades in

exchange for access to their portfolio of properties throughout the world. Currently, the Debtors serve approximately 1,200 club members.

7. A more detailed factual background of the Debtors' business and operations, as well as the events precipitating the commencement of these Cases, is fully set forth in the *Declaration of Philip Callaghan in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.

A. **The Debtors' Cash Management System**

8. Prior to the commencement of their chapter 11 cases, and in the ordinary course of their business, the Debtors maintained four (4) bank accounts (collectively, the "**Bank Accounts**") that the Debtors desire to continue and use. A list of all Bank Accounts used by the Debtors is attached hereto as **Exhibit "A"** and is incorporated herein by reference. The Bank Accounts are part of a carefully constructed cash management system (the "**Cash Management System**") that ensures the Debtors' ability to efficiently monitor and control their cash position, as is more fully described below and as set forth in the account flow chart attached hereto as **Exhibit "B"** and incorporated herein by reference. The Debtors' Cash Management System is summarized as follows:

> a. Main Operating Account: Debtor Ultimate Escapes Holdings, LLC (the "**Holding Company**") maintains one main operating account with CNL Bank (the "**UE Main Operating Account**")[2] to which deposits and withdrawals are made on a daily basis. The UE Main Operating Account serves as the ultimate collection and disbursement point for the majority of the Debtors funds moved into and through the Debtors' Cash Management System. The UE Main Operating Account is used to manage daily operations, including but not limited

---

[2] Unless otherwise noted, all of the Debtors' bank accounts are maintained at CNL Bank in Orlando, Florida and Bank of Nevis. CNL Bancshares, Inc. is the holding company for CNL Bank headquartered in Orlando, Florida. The company operates 16 full-service banking offices in Jacksonville, Orlando, Ft. Lauderdale, Coral Gables, Naples, Ft. Myers, and Sarasota with assets in excess of $1.5 billion. CNL Bank is a member of the FDIC. All of the Debtors' accounts held at CNL are FDIC insured.

to, payments related to payroll, individual property level expenses and taxes, and the Debtors' obligations under its credit facilities. Generally, invoices for utilities, taxes and other property level expenses for each of the Debtors' individual properties are sent directly to the Holding Company. When funds are needed to pay property level expenses, amounts are disbursed in the ordinary course of business from the UE Main Operating Account on behalf of the various property locations. Disbursements from the UE Main Operating Account are tracked, for accounting purposes, for each individual property and accounting ledgers are maintained and reconciled monthly. In addition, employee payroll obligations are funded from the UE Main Operating Account and payments are made to the individual accounts of the Debtors' employees. Deposits made into the UE Main Operating Account include checks, wire transfers, credit card payments (VISA, MasterCard and Discover), and small amounts of cash deposits received from the Debtors' customers.

Additional Operating Accounts: The Debtors also maintain two additional operating accounts (the "**Operating Accounts**") which are owned by Debtor Ultimate Resort, LLC, and are currently maintained with small balances (the "**UR Accounts**"). One of the UR Accounts is a checking account with a balance of less than $1,000. The other UR Account is premium money market account with an available balance of approximately $6,000. The UR Accounts have been used previously by the Debtors to pay taxes, however, currently these accounts are considered dormant accounts with minimal activity.

b. Lockboxes: The Debtors do not have any lockbox accounts.

c. Nevis Bank Accounts: The Debtors currently maintain a bank account in Nevis with Bank of Nevis (the "**Nevis Bank Account**"). Periodic transfers are made from the UE Operating Account to the Nevis Bank Account, typically on a weekly basis. The transferred funds are used to pay the direct property level operating expenses, including utilities and other expenses, of 7 properties owned by Debtor Ultimate Nevis Investments LLC. The weekly transfers made from the UE Operating Account into the Nevis Bank Account average approximately $25,000 U.S. dollars per week. Once the funds are transferred, checks are written against the Nevis Bank Account in the ordinary course of business to cover monthly expenses. At the end of each month, amounts remaining (if any) in the Nevis Bank Accounts are relatively small and insignificant. The funds in the Nevis Bank Account are held in East Caribbean dollars.[3]

## B. Existing Bank Accounts and Business Forms

9. The Debtors hereby request authority to maintain and continue to use their existing Bank Accounts in the name and with the account numbers existing immediately prior to

---

[3] As of September 1, 2010, one U.S. dollar = 2.70000 East Caribbean dollar.

the Petition Date, as listed on **Exhibit "A"** to this Motion. The Debtors' transition into chapter 11 will be significantly less disruptive if the Bank Accounts are maintained following the commencement of these Cases with the same account numbers and, where applicable, automated relationship.

10. The Debtors reserve the right, provided that they have obtained the prior written consent of the Agents, DIP Lender and Original Lender (as those terms are defined in the *Interim and Final Order (I) Authorizing (A) Secured Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364(c) and (d); (B) Granting Security Interest, Superpriority Claims and Adequate Protection; and (C) Use of Cash Collateral and (II) Scheduling a Final Hearing* (collectively, the "**DIP Order**"), to close or otherwise modify the terms of certain of the Bank Accounts and open new debtor-in-possession accounts as may be necessary to facilitate their chapter 11 cases and operations, or as may otherwise be necessary to comply with the requirements of any Court-approved debtor-in-possession financing facility and/or cash collateral usage, including the DIP Order.

11. The Debtors further request authority to deposit funds in and withdraw funds from all such accounts by all usual means including, but not limited to, checks, wire transfers, automated clearinghouse transfers, electronic funds transfers, and other debits and to treat the Bank Accounts for all purposes as debtor-in-possession accounts.

12. Finally, to minimize administrative expense and delay, the Debtors request authority to continue to use their pre-printed checks, correspondence, and business forms, including, but not limited to, letterhead, envelopes, promotional materials, and other business forms (collectively, the "**Business Forms**"), substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' "Debtor-in-Possession" status.

C.  **Intercompany Transactions**

13. The Debtors also maintain business relationships with each other that give rise to intercompany claims (the "**Intercompany Transactions**"). From time to time, transfers are made from the Holding Company on behalf of the Debtors' affiliates and subsidiaries to pay for certain operating expenses. These transactions simply flow from the Holding Company to the Debtors' subsidiaries. The Debtors maintain records of all Intercompany Transactions, and thus can ascertain, trace and account for such Intercompany Transactions. The Debtors will continue to maintain records and appropriately reconcile all Intercompany Transactions post-petition. The Debtors request authority to grant administrative expense priority to the Intercompany Transactions junior and subordinate to the DIP Facility Liens, Adequate Protection Liens, 507(b) Claim and Superpriority Claims as defined and described in the DIP Order.

**Relief Requested**

14. By this Motion, the Debtors seek an order: (a) authorizing the maintenance of Bank Accounts and continued use of existing business forms and checks; (b) authorizing continued use of existing cash management system; (c) granting administrative expense priority to post-petition intercompany claims; and (d) waiving certain investment and deposit guidelines of section 345 of the Bankruptcy Code and of the Office of the United States Trustee on an interim basis; and (e) providing any additional relief required in order to effectuate the foregoing. The Debtors submit this request, subject to the limitation that the DIP Order shall control to the extent any of the relief requested herein is inconsistent with the terms of the DIP Order. The relief requested herein will help ensure the Debtors' smooth transition into chapter 11 and avoid the possible disruptions and distractions that could otherwise divert the Debtors' attention from more pressing matters during the initial days of these Cases.

## Basis for Relief Requested

### A. Cash Management System

15. The continued use of a cash management system employed in the ordinary course of a debtor's prepetition business has been approved as a routine matter in a number of other cases in this district. *See, e.g., In re Smurfit-Stone Container Corp.*, Case No. 09-10235 (BLS) (Bankr. D. Del. Jan. 26, 2009); *In re Portola Packaging, Inc.*, No. 08-12001 (CSS) (Bankr. D. Del. Aug. 29, 2008); *In re Hines Horticulture, Inc.*, No. 08-11922 (KJC) (Bankr. D. Del. Aug. 22, 2008); *In re Pierre Foods, Inc.*, No. 08-11480 (KG) (Bankr. D. Del. July 16, 2008); *In re ACG Holdings, Inc.*, No. 08-11467 (CSS) (Bankr. D. Del. July 16, 2008). Courts have recognized that strict enforcement of the bank account closure requirements in certain cases does not serve the rehabilitative purposes of chapter 11. Accordingly, cases in this district have waived such requirements and replaced them with alternative procedures that provide the same protections. *See, e.g., In re Exide Technologies*, Case No. 02-11125 (Bankr. D. Del. April 17, 2002) (permitting debtors to maintain existing bank accounts and cash management system); *In re W.R. Grace & Co.*, Case No 01-01139 (Bankr. D. Del. April 2, 2001) (same); *In re USG Corp.*, Case No. 01-02094 (Bankr. D. Del. June 27, 2001) (same); *In re Waccamaw's HomePlace*, Case No. 01-00181 (Bankr. D. Del. Jan. 17, 2001) (same); *In re Trans World Airlines, Inc.*, Case No. 01-00056 (Bankr. D. Del. Jan. 10, 2001) (same); *In re Plainwell, Inc.*, Case No. 00-04350 (Bankr. D. Del., Nov. 22, 2000) (allowing the debtors to maintain existing bank accounts when changing accounts would be too burdensome).

16. Indeed, courts in this district have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in*

*part*, 997 F.2d 1039 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

17. Further, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title" and section 363(c)(1) of the Bankruptcy Code authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. §§ 105(a) and 363(c)(1). The purpose of these sections is to provide a debtor-in-possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *See Med. Malpractice Ins. Ass'n. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997).

18. The Debtors' Cash Management System constitutes a customary and essential business practice that was created and implemented by the management of the Debtors in the exercise of their business judgment. Indeed, the Cash Management System is a practical mechanism that allows the Debtors to transfer their revenues to the payment of their obligations and that decreases the burdens on the Debtors and provides several important benefits, including the ability to: (a) control and monitor corporate funds; (b) ensure cash availability to pay for property level operating expenses; and (c) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate balance and presentment information. All of these benefits will assist the Debtors in their efforts to maintain their

operations pending the confirmation of a chapter 11 plan, making the relief requested herein appropriate under section 105(a) of the Bankruptcy Code.

B. **The Debtors Should be Permitted to Maintain Bank Accounts**

19. For similar reasons, the Debtors should be authorized to continue to fund their business and operations by payments made from the Bank Accounts listed on **Exhibit "A"** to this Motion, and should be exempt from certain of the Guidelines established by the United States Trustee for the District of Delaware. One provision of the Guidelines requires a chapter 11 debtor-in-possession to open new Bank Accounts and close all existing accounts. This requirement, designed to provide a clear line of demarcation between prepetition and post-petition claims and payments, helps to protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date. The Guidelines also require that the new Bank Accounts only be opened in certain financial institutions designated as authorized depositories by the United States Trustee.

20. Certain of the Debtors' Bank Accounts may be held at banks that have not executed a uniform depository agreement with the Office of the United States Trustee for the District of Delaware. To the extent the Bank Accounts are held at such a bank, the Debtors request that the Court authorize, but not require, the Debtors to seek to cause such bank or banks to execute a uniform depository agreement in a form prescribed by the Office of the United States Trustee within forty-five (45) days of the date of entry of an order authorizing this Motion, subject to the full reservation of rights of the United States Trustee if a uniform depository agreement is not executed.

21. As part of the requested relief, the Debtors also seek a waiver of the requirement to establish specific Bank Accounts for tax payments. The Debtors believe that tax obligations can be paid most efficiently out of the existing Bank Accounts, that the United States Trustee can

adequately monitor the flow of funds into, among, and out of the Bank Accounts, and that the creation of new debtor-in-possession accounts designated solely for tax obligations would be unnecessary and inefficient.[4]

22. The Debtors hereby request authority to maintain their Bank Accounts and utilize them pursuant to the existing Cash Management System described above. The Debtors do not believe that allowing them to do so will prejudice any party-in-interest or their estates. If the relief requested herein is granted, the Debtors will not pay, and each of their banks where the bank accounts are maintained will be instructed not to pay, any debts incurred before the Petition Date unless specifically authorized by this Court.

23. Moreover, if the Debtors were forced to close their Bank Accounts, the Debtors expect that there would be disruption and confusion that would negatively impact their operations. For instance, funds may be misapplied, held in limbo, or otherwise delayed, thus negatively affecting the Debtors' relationships with parties, who are necessary to the Debtors' efforts, and who already may be burdened by the filing of these cases. As a result, the Debtors' submit that maintenance of the existing Bank Accounts and Cash Management System is warranted.

24. Subject to section 553 of the Bankruptcy Code and the DIP Order, all banks that maintain the Bank Accounts should be prohibited from offsetting, affecting, freezing, or

---

[4] The Debtors also seek a waiver of the deposit guidelines set forth in section 345 of the Bankruptcy Code to the extent necessary to allow the Debtors to maintain their Bank Accounts and the existing cash management procedures. Section 345(a) of the Bankruptcy Code provides: "A trustee in a case under this title may make such deposit or investment of the money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). The Debtors believe that the Bank Accounts comply with this section of the Bankruptcy Code. Nevertheless, to the extent the Bank Accounts do not strictly comply with the guidelines identified in section 345 of the Bankruptcy Code, the Debtors' believe their deposits are safe and prudent. Moreover, requiring the Debtors to move or open accounts at different banks would be unnecessarily burdensome and would lead to the same delays and disruption to the Debtors' business that this Motion seeks to avoid. For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interest of the Debtors and their estates, creditors and other parties-in-interest.

otherwise impeding the Debtors' use of any funds deposited in the Bank Accounts on account of, or by reason of, any claim (as defined in section 101(5) of the Bankruptcy Code) of any such bank against the Debtors that arose before the Petition Date, absent further order of the Court.

### C. The Debtors Should be Permitted to Continue Using Existing Business Forms

25. Local Rule 2015-2(a),[5] does not require the debtors to obtain court approval continue to use their existing Business Forms without imprinting "DIP" or "Debtor-in-Possession" thereon. Accordingly, and in an abundance of caution, the Debtors request that this Court authorize them to use all correspondence and Business Forms existing immediately before the Petition Date without reference to the Debtors' status as "Debtors-in-Possession." As of the Petition Date, the Debtors had a large stock of Business Forms that they used in the ordinary course of business. Reprinting their Business Forms to indicate that the Debtors are "Debtors-in-Possession" would impose an unnecessary burden and expense on the Debtors. There is little doubt that the parties with whom the Debtors do business shortly will become aware that they are chapter 11 debtors-in-possession. In any event, in accordance with the Guidelines and Local Rule 2015-2(a), the Debtors will add such "Debtors-in-Possession" designation to any checks that they obtain or create post-petition.

---

[5] Local Rule. 2015-2(a) provides:

> Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts. However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

Moreover, this Court has allowed debtors to use their existing prepetition forms without the "Debtor-In-Possession" label. *See In re Trans World Airlines, Inc.*, Case No. 01-0056 (PJW) (order dated January 10, 2001); *In re AmeriServe Food Distribution, Inc.*, Case No. 00-358 (PJW) (order dated February 2, 2000); *In re Zenith Electronics Corp.*, Case No. 99-2711 (MFW) (order dated August 23, 1999).

D. **The Debtors Should be Permitted to Continue Intercompany Transactions and Intercompany Transactions Should be Granted Administrative Priority Expense Status**

26. As described above, under the Cash Management System, the Debtors enter into certain Intercompany Transactions with their Debtor-affiliates in the ordinary course of their business. The Intercompany Transactions are made from the Holding Company to the Debtors' affiliates and subsidiaries, and allow the Debtors, among other things, to meet the needs of their customers and vendors efficiently in a cost-effective manner through the centralization of key administrative functions. For example, disbursements are typically made on a daily basis from the Holding Company to pay for the current operating expenses of various property level Debtors. If these Intercompany Transactions are discontinued, the Debtors' cash management process would be disrupted causing irreparable harm to the Debtors. Accordingly, the Debtors believe that the continuation of Intercompany Transactions with their Debtor-affiliates in the ordinary course of the Debtors' business is in the best interest of the Debtors' estates and their creditors. Out of an abundance of caution, the Debtors seek authority to continue to enter into such Intercompany Transactions in the ordinary course of their business. The Debtors maintain records of all Intercompany Transactions and can ascertain, trace and account for the Intercompany Transactions at all times. The Debtors will continue to maintain such records post-petition and will not make payments to non-Debtor affiliates.

27. To ensure that each individual Debtor will not fund, at the expense of its creditors, the operations of another entity, the Debtors respectfully request that, pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all Intercompany Transactions be granted administrative priority expense status, junior and subordinate to the DIP Facility Liens, Adequate Protection Liens, 507(b) Claim and Superpriority Claims as defined and described in the DIP Order. Administrative expense treatment for intercompany claims has been granted in other

complex multi-debtor chapter 11 cases in this District. *See, e.g., In re Smurfit-Stone Container Corp.*, Case No. 09-10235 (BLS) (Bankr. D. Del. Feb. 23, 2009); *In re Merisant Worldwide, Inc.*, Case No. 09-10059 (PJW) (Bankr. D. Del. Jan. 13, 2009); *In re Tribune Co.*, 08-13141 (KJC) (Bankr. D. Del. Dec. 10, 2008); *In re Tropicana Entm't LLC*, Case No. 08-10856 (KJC) (Bankr. D. Del. May 6, 2008); *In re Pope & Talbot, Inc.*, Case No. 07-11738 (CSS) (Bankr. D. Del. Nov. 21, 2007); *In re Dura Automotive Systems, Inc.*, Case No. 06-11202 (KJC) (Bankr. D. Del. Nov. 21, 2006); *In re J.L. French Automotive Castings, Inc.*, Case No. 06-10119 (MFW) (Bankr. D. Del. Mar 9, 2006); *In re Fed. Mogul Global, Inc.*, Case No. 01-10578 (JKF) (Bankr. D. Del. Oct. 4, 2001).

28. The Debtors request this authority, subject to the rights, if any, of the parties in interest in these Cases to challenge the validity of such claims and Intercompany Transactions, provided that each Debtor shall forbear from exercising, and shall not be entitled to exercise, any remedy relating to any Intercompany Transaction including, without limitation, seeking relief from the automatic stay, or seeking any sale, foreclosure, realization upon, repossession or liquidation of any property of another Debtor, or taking any position with respect to any disposition of the property, business operations, or the reorganization of another Debtor, absent further order of this Court. In an abundance of caution, the Debtors request that this Court clarify that this relief will not limit the Debtors' ability to reconcile amounts owed between and among any Debtor and any Debtor-affiliate, including netting and setting off obligations arising from Intercompany Transactions, whether arising pre or post-petition, in the ordinary course of business, between a particular Debtor and any other Debtor-affiliate.

## E. Bankruptcy Rule 6003 Satisfied and Request for Waiver of Stay

29. The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein and in the First Day Declaration, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

30. Specifically, Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

31. No court within the Third Circuit has interpreted the "immediate and irreparable harm" language in the context of Bankruptcy Rule 6003 in any reported decision. However, the Third Circuit Court of Appeals has interpreted the same language in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. Appx. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle County*, 40 F.2d 645, 653-55 (3d Cir. 1994).

32. The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of ten (10) days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtors'

operations, going-concern value, and their efforts to pursue a sale or restructuring of their assets and liabilities.

33. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6003 and 6004(h).

## Notice

34. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel to the Debtors' prepetition secured lenders; (c) counsel to the Debtors' post-petition secured lenders; (d) creditors holding the twenty (20) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (e) the Office of the United States Attorney General for the District of Delaware; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; and (h) each of the banks holding the Bank Accounts set forth in **Exhibit "A"** hereto. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion in accordance with the Local Rules. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

35. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and that it grant the Debtors such other and further relief as is just and proper.

Dated: September 20, 2010

GREENBERG TRAURIG, LLP

*[signature]*

Scott D. Cousins (DE Bar No 3079)
Matthew L. Hinker (DE Bar No. 5348)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: cousinss@gtlaw.com
Email: hinkerm@gtlaw.com

-and-

Nancy A. Mitchell
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mitchelln@gtlaw.com

Proposed Counsel for the Debtors
and Debtors-in-Possession