# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 10-_____ (\_\_\_\_) |
| ULTIMATE ESCAPES HOLDINGS, LLC, *et al.*,[1] | (Jointly Administered) |
| | Re: Docket No. \_\_\_ |
| Debtors. | |

## BID PROCEDURES[2]

The above-captioned debtors and debtors-in-possession (collectively the "**Debtors**") have filed chapter 11 cases pending in the United States Bankruptcy Court in the District of Delaware (the "**Bankruptcy Court**"), jointly administered under Case No. 10-_____ (\_\_\_\_). By motion dated September 20, 2010 (the "**Motion**"), the Debtors seek, among other things, approval of the process and procedures set forth below (the "**Bid Procedures**") to effectuate the sale (the "**Sale**") of substantially all of the Debtors' assets to be acquired in accordance with the Sale (the "**Acquired Assets**") outside the ordinary course of business (the "**Transaction**") free and clear of all liens, claims, encumbrances and other "interests" within the meaning of 11 U.S.C. § 363(f) of the Bankruptcy Code (collectively, the "**Encumbrances**"). The Bid Procedures are designed to facilitate a full and fair bidding process to maximize the value of the Acquired Assets for the benefit of the Debtors' creditors and their bankruptcy estates.

On or before October \_\_\_\_, 2010, as further described below, the Bankruptcy Court shall conduct a hearing (the "**Sale Hearing**") at which time the Debtors shall seek entry of an order (the "**Sale Order**") authorizing and approving the sale of the Acquired Assets (the "**Proposed Sale**") to CapitalSource Finance LLC, as administrative, payment and collateral agent ("**CapitalSource Finance**"), CapitalSource Bahamas LLC, as a collateral agent ("**CapitalSource Bahamas**" and together with CapitalSource Finance, collectively, the "**Agents**"), for the benefit of CapitalSource Bank, as lender ("**CapitalSource**," together with Agents or any of their respective designees, collectively, the "**Stalking Horse Purchaser**"), with respect to the proposed the Sale (to the Stalking Horse Purchaser or to any other Successful Bidder(s) (the "**Alternative Purchaser**")), and subject to higher or better bids.[3]

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as **Schedule "1"**.

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Purchase Agreement (defined herein).

[3] "Acquired Assets" shall refer to the Properties and Purchased Assets as more fully set forth in the Purchase Agreement.

*Asset Purchase Agreement*

On September 20, 2010, the Debtors entered into an asset purchase agreement (the **"Purchase Agreement"**) with the Stalking Horse Purchaser, pursuant to which the Stalking Horse Purchaser proposed to acquire the Acquired Assets. While the assets to be purchased as part of the Transaction do not include the Excluded Assets, and do not provide for the assumption by the Stalking Horse Purchaser of any executory contracts and unexpired leases of the Debtors, the Debtors are willing to consider offers that include Excluded Assets or that provide for the assumption and assignments of the Debtors' executory contracts (the **"Assigned Contracts"**). Pursuant to the Purchase Agreement, the Stalking Horse Purchaser will provide consideration for the Acquired Assets in an amount equal to the Purchase Price. The Transaction contemplated by the Purchase Agreement is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code (the **"Bankruptcy Code"**).

*Participation Requirements*

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, each person (a **"Potential Bidder"**) must first deliver (unless previously delivered) to (i) counsel to the Debtors, Greenberg Traurig, LLP, 200 Park Avenue, New York, NY 10166 (Attn: Nancy A. Mitchell, Esq.) and Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, DE 19801 (Attn: Scott D. Cousins, Esq.); (ii) counsel to the Committee [_____]; (iii) counsel to the Stalking Horse Purchaser, Patton Boggs LLP, 1185 Avenue of the Americas, New York, New York 10036, (Attn: Michael Richman, Esq.) and Patton Boggs LLP, 2550 M. Street, N.W., Washington, D.C. 20037 (Attn: Mark A. Salzberg, Esq.); (iv) CRG Partners Group, LLC, 2 Atlantic Avenue, Boston, MA 02110 (Attn: Todd Michalik) and (v) counsel to the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn: David Klauder, Esq.) (collectively, the **"Notice Parties"**), no later than October ____, 2010, the following items (collectively, the **"Participation Requirements"**):

(a) <u>Confidentiality Agreement</u>. An executed confidentiality agreement in form and substance reasonably acceptable to the Debtors (each a **"Confidentiality Agreement"**); and

(b) <u>Proof of Financial Ability to Perform</u>. Within five (5) days after the later of (i) a Potential Bidder's initial access to Due Diligence Materials (as described below) or (ii) the date of entry of the Bidding Procedures Order, written evidence that the Debtors, after consultation with CapitalSource, reasonably conclude demonstrates the Potential Bidder has the necessary financial ability to close the contemplated Transaction and provide adequate assurance of future performance under all the Assigned Contracts to be assumed and assigned in such contemplated Transaction. Such information should include, *inter alia*, the following:

(i) the Potential Bidder's current financial statements (audited if they exist); and

(ii)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, after consulting with CapitalSource, demonstrating that such Potential Bidder has the ability to close the contemplated Transaction; <u>provided, however,</u> that the Debtors shall determine, in their reasonable discretion, in consultation with the Debtors' advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Potential Bidder's financial qualifications.

<u>Provided, however,</u> that in lieu of a Potential Bidder's financial statements, the Debtors may accept other information that reasonably demonstrates a Potential Bidder's financial condition; and that in connection with any bid by members on behalf of a member sponsored plan, financial ability to close the contemplated transaction may, subject to CapitalSource's consent, be evidenced by the results of a poll to be conducted by the Debtor seeking an indication of interest for members' support of such plan.

*Access to Due Diligence Materials*

Upon satisfaction of the Participation Requirements, the Debtors will afford each Potential Bidder due diligence access to the Acquired Assets; <u>provided, however,</u> that (i) the Debtors shall have the right to reasonably limit the due diligence provided to competitors and (ii) the Debtors will have no obligation to provide due diligence access after the Bid Deadline (defined below). The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access for Potential Bidders.

If the Debtors furnish any information related to the Debtors or the Acquired Assets not theretofore given to the Stalking Horse Purchaser, then the Debtors shall immediately make such information available to the Stalking Horse Purchaser.

*Designation as Qualified Bidder*

A "**Qualified Bidder**" is a Potential Bidder that delivers the documents described in subparagraphs (a) and (b) above, and that the Debtors determine is reasonably likely to submit a bona fide offer that would result in greater value being received for the benefit of the Debtors' creditors than under the Purchase Agreement and to be able to consummate a sale if selected as a Successful Bidder (defined below). As soon as is practicable, upon receipt of such documents the Debtors shall notify the Potential Bidder that such Potential Bidder is a Qualified Bidder.

CapitalSource is a Qualified Bidder and shall be entitled to credit bid all or a portion of its claims against the Debtors to the fullest extent permissible under section 363(k) of the Bankruptcy Code. Notwithstanding any provisions to the contrary herein, CapitalSource shall not be required to submit a Bid or Qualified Bid for purposes of exercising its right to credit bid under section 363(k) of the Bankruptcy Code.

*Bid Deadline*

The deadline for submitting bids by a Qualified Bidder shall be October ____, 2010, at 12:00 p.m. (Eastern Time) (the **"Bid Deadline"**). A Bid received after the Bid Deadline shall not constitute a Qualified Bid (as defined below).

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a **"Bid"**) shall deliver written copies of its Bid to the Notice Parties by the Bid Deadline.

*Determination of Qualified Bid Status*

To be eligible to participate in the Bidding Process each Qualified Bidder (other than the Stalking Horse Purchaser) must deliver to the Debtors a written offer so as to be received by the Bid Deadline and that complies with each of the following conditions:

(a) Modified Agreement. The Bid must be on terms that, in the Debtors' business judgment, in consultation with CapitalSource, are substantially the same or better than the terms of the Purchase Agreement. A Bid must include fully executed transaction documents pursuant to which the Qualified Bidder proposes to effectuate the contemplated Transaction. A Bid shall include a black-lined copy of the Purchase Agreement (the **"Modified Agreement"**) to show all changes requested by the Bidder, including those related to the Purchase Price.

(b) Acquired Assets. Each Bid shall be for all or a portion of the Acquired Assets that the Qualified Bidder seeks to acquire. Each Bid may also include Excluded Assets and potential assumption or assignment of the Assigned Contracts. **DEBTORS MAKE NO REPRESENTATIONS OR WARRANTIES REGARDING THE CONDITION OF THE ACQUIRED ASSETS AT CLOSING AND PURCHASER TAKES SUCH ACQUIRED ASSETS ON AN AS-IS / WHERE-IS BASIS.**

(c) Contingencies. A Bid may not be conditioned on obtaining internal approval, obtaining financing or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Purchase Agreement.

(d) Authorization to Bid. A Bid shall include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Agreement.

(e) Good Faith Deposit. Each Bid or Combination Bid must be accompanied by a cash deposit in an amount equal to ten percent (10%) of the proposed purchase price offered by the Qualified Bidder in its Qualified Bid (the **"Good Faith Deposit"**). Each Bid must provide that the Bidder will forfeit its Good Faith

Deposit as liquidated damages if such Bidder defaults under or revokes the contemplated Transaction prior to the consummation of the Proposed Sale with the Successful Bidder (defined below). A Bidder shall forfeit the Good Faith Deposit if (i) the Bidder is determined to be a Qualified Bidder and withdraws its bid before the Bankruptcy Court approved the Debtors' selection of the winning bid, and/or (ii) withdraws or breaches the Purchase Agreement without Debtors' consent before consummation of the sale.

(f) No Fees payable to Qualified Bidder. A Bid (other than the Stalking Horse Bid(s)) may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bidding Procedures.

(g) Financing Sources. A Bid must contain evidence of the ability to consummate the Transaction satisfactory to the Debtors with appropriate contact information for all such financing sources.

(h) Solicitation of Membership Interest. The Debtors will use commercially reasonable efforts to accommodate any Potential Bidder who wishes to ascertain, prior to its submission of a bid, the interests of Debtors' members in accepting an offer to become a member (or other equivalent participation) in the business of such bidder by conducting a poll of its members based upon information to be provided by such bidder seeking a non-binding indication of interest from Debtors' members regarding his or her interest in such plan. The Debtors, with the consent of CapitalSource, reserve the right to determine the manner in which any such poll may be conducted by the Debtors, whether one or more polls would be conducted, and whether any Alterative Purchaser that proposed a Bid contingent on an a minimum number of members actually accepting such offer would be required to post an up-front non-refundable fee that would equal the cost of continuing to operate the Debtors for any period beyond the current expected closing pursuant to the Purchase Agreement.

(i) Minimum Initial Bid Requirement. Each Qualified Bidder's Bid shall have an initial minimum bid requirement equal to the sum of (i) the Purchase Price, (ii) $25,000, (iii) an additional amount equal to one percent (1%) of the foregoing items (i) and (ii) to be paid to the Debtors' financial advisors and (iv) the Expense Reimbursement (as defined in the Motion) (the "**Minimum Initial Bid**").

(j) Other Evidence. Each Bid must contain evidence satisfactory to the Debtors that the bidder is reasonably likely (based on availability of financing, experience and other considerations) to be able to timely consummate a purchase of the Acquired Assets if selected as the Successful Bidder (as defined below).

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, in the Debtors' reasonable discretion (taking into account the terms and conditions

of any assumed debt obligations), and that satisfies the Bid Deadline requirement above, shall constitute a qualified bid ("**Qualified Bid**"). In the event that a Bid is determined not to be a Qualified Bid in accordance with the conditions set forth above, the Qualified Bidder shall be notified by the Debtors within three (3) business days of any conditions which it has failed to satisfy and the Qualified Bidder shall have two (2) days from the date of such notification to modify its Bid to render it a Qualified Bid. If a Qualified Bidder declines or fails to modify its Bid as provided for herein, the Qualified Bidder shall be refunded its Good Faith Deposit and all accumulated interest thereon upon or within one (1) business day after entry of the Sale Order.

*Auction*

In the event that the Debtors receive at least one (1) Qualified Bid (other than the Bid by the Stalking Horse Purchaser) by the Bid Deadline, the Debtors shall conduct the Auction of the Acquired Assets to determine the highest and otherwise best bid with respect to the Acquired Assets. No later than October ____, 2010 at 4:00 p.m. (prevailing Eastern time), the Debtors will notify all Qualified Bidders of (i) the highest or otherwise best Qualified Bid for the Acquired Assets or any portion(s) thereof (the "**Baseline Bid**") and (ii) the time and place of the Auction. The Auction shall commence on October ____, 2010 at 10:00 a.m. at the offices of Greenberg Traurig, LLP, 200 Park Avenue, New York, New York 10166.

If, however, no such Qualified Bid other than that of the Stalking Horse Purchaser is received by the Bid Deadline, the Debtors will report the same to the Bankruptcy Court, will declare the Stalking Horse Purchaser the Successful Bidder and will proceed with the Transaction pursuant to the terms of the Purchase Agreement, upon entry of an order approving the sale of the Acquired Assets to the Stalking Horse Purchaser.

*Participation in the Auction*

Only the Debtors, the Stalking Horse Purchaser, any representative of the Committee, and any Qualified Bidder who has timely submitted a Qualified Bid (and professional advisors to each of these parties) may attend the Auction. Each Qualified Bidder in attendance shall confirm that it has not engaged in any collusion with respect to the bidding or the sale. Only the Stalking Horse Purchaser and other Qualified Bidders may make any subsequent Qualified Bids at the Auction.

The Debtors and their professional advisors shall direct and preside over the Auction. Bidding at the Auction shall begin with the Baseline Bid(s), which, in the event such Baseline Bid(s) is not that of the Stalking Horse Purchaser, shall be in an amount at least equal to the Minimum Initial Bid. All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders and the Stalking Horse Purchaser. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids and the Successful Bid(s).

*Terms of Overbids*

An "**Overbid**" is any bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid. With respect to any Overbid on any Individual Property, any Qualified

Bidder's initial Overbid shall be at least $25,000 in excess of the Baseline Bid and each subsequent Overbid must be made in increments of at least $25,000 over the previous highest or best bid and Qualified Bidders other than the Stalking Horse Purchaser shall also be required to add an additional amount equal to one percent (1%) of the amount of such bid (to be paid to the Debtors' financial advisors). Additional consideration in excess of the amount set forth in the Baseline Bid may include a combination of cash and assumed debt obligations including any proposed treatment of member contracts, leases, contract cure amounts, real estate taxes, HOA obligations, and payroll accruals; provided, however, that CapitalSource shall consent in writing to any Bid that provides for the assumption of their debt in whole or in part.

Each Overbid must comply with the conditions for a Qualified Bid set forth above other than the Minimum Initial Bid requirement. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtors accept a higher Qualified Bid as an Overbid. The Debtors shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid.

*Closing the Auction*

Upon conclusion of the bidding, the Debtors shall immediately determine, the highest or otherwise best offer or combination of offers for the Acquired Assets (the **"Successful Bid"**) and the entity or entities submitting such Successful Bid(s) (the **"Successful Bidder"**), and the next highest or otherwise best offer or offers after the Successful Bid (the **"Back-Up Bid"**) and the entity or entities submitting such Back-Up Bid (the **"Back-Up Bidder"**), and advise the Qualified Bidders of such determinations.

Thereafter, the Auction shall be closed, and the Debtors shall immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale. If the Stalking Horse Purchaser's final bid is deemed to the highest and best bid at the Auction, the Stalking Horse Purchaser shall be the Successful Bidder. The Back-Up Bid shall remain open, and the Back-Up Bidder shall be required to fully perform under such Back-Up Bid, until consummation of the sale with the Successful Bidder.

*Failure to Close*

In the event the Successful Bidder (unless the Successful Bidder is the Stalking Horse Purchaser) fails to consummate the sale as a result of the Successful Bidder's default or breach under the applicable purchase agreement in accordance with the terms of such purchase agreement by the closing date contemplated in such purchase agreement, the Debtors shall retain the Successful Bidder's Good Faith Deposit as liquidated damages, and be free to enter into a new purchase agreement with the next most appropriate Qualified Bidder at the highest price bid by such Qualified Bidder at the Auction.

Following the approval of the sale of the Acquired Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate an approved sale within thirty (30) days after entry of an Order approving the Sale, the Debtors shall be authorized, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtors,

in consultation with CapitalSource, shall be authorized, but not required, to consummate the sale with the Back-Up Bidder submitting such Back-Up Bid without further order of the Bankruptcy Court.

*Consent to Jurisdiction as Condition to Bidding*

All Qualified Bidders, including the Stalking Horse Purchaser, at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Qualified Bidder's contemplated Transaction documents, as applicable.

*Acceptance of Successful Bid*

The Debtors shall sell the Acquired Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of such bid. The Debtors will be deemed to have accepted a Qualified Bid only when such bid has been approved by the Bankruptcy Court at the Sale Hearing.

*Free of Any and All Interests*

As set forth in the Purchase Agreement, except as otherwise provided for therein or in another Successful Bidder's purchase agreement, all of Debtors' right, title and interest in and to the Acquired Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "**Interests**"), in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Acquired Assets.

*Credit Bidding*

The Stalking Horse Purchaser shall be entitled to credit bid all or a portion of its claims (whether prepetition or postpetition) against the Debtors to the fullest extent permissible under section 363(k) of the Bankruptcy Code. Credit bids by the Stalking Horse Purchaser will be considered and accepted or rejected by the Debtors in the same manner as bids by other Qualified Bidders. At all relevant times, the Stalking Horse Purchaser shall be deemed a Qualified Bidder.

*Sale Hearing*

The Sale Hearing shall be conducted by the Bankruptcy Court on or before October ___, 2010.

*Return of Good Faith Deposit*

The Good Faith Deposit of the Successful Bidder shall be applied to the Purchase Price of such transaction at Closing. The Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until consummation of the Proposed Sale with the Successful Bidder, and thereafter returned to the respective bidders. If a Successful Bidder fails

to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder.

*Modifications*

The Debtors, with the consent of the CapitalSource, expressly reserve the right to modify the relief requested herein. Moreover, the Debtors, with the consent of CapitalSource, reserve the right, upon notice to all Notice Parties and those parties that have demonstrated an interest in bidding on the Acquired Assets, to: (a) waive terms and conditions set forth herein with respect to any or all potential bidders, (b) impose additional terms and conditions with respect to any or all potential bidders, (c) extend the deadlines set forth herein, (d) cancel the sale of the Acquired Assets and/or Sale Hearing in open court without further notice; and (e) amend the Bid Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice.

*DEL 86,339,646v8*