## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ULTIMATE ESCAPES HOLDINGS, LLC, *et al.*,[1] | Case No. 10-_____ ( ) |
| Debtors. | (Joint Administration Requested) |

## MOTION OF DEBTORS FOR (I) AUTHORIZATION TO (A) OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 364(c) AND (d); (B) GRANT SECURITY INTERESTS, SUPERPRIORITY CLAIMS AND ADEQUATE PROTECTION; AND (C) USE CASH COLLATERAL AND (II) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), respectfully represent:

### BANKRUPTCY RULE 4001 CONCISE STATEMENT

1.     By this motion (the "**Motion**"), the Debtors request entry of interim (the "**Interim Order**") and final orders (the "**Final Order**," and together with the Interim Order, the "**DIP Orders**") (a) authorizing the Debtors pursuant to sections 363(c), 364(c) and 364(d) of title 11 of the United States Code §§ 101-1532 (the "**Bankruptcy Code**"), and Rules 2002, 4001(c) and (d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and 4001-2, 4001-3, 9013-1(f) and (g) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), inter alia, (i) to obtain post-petition financing (the "**Post-Petition Financing**") from CapitalSource Finance LLC, as administrative, payment and collateral agent ("**CapitalSource Finance**"), CapitalSource Bahamas LLC, as a collateral agent ("**CapitalSource Bahamas**" and together with

---

[1]     A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as **Schedule "1"**.

CapitalSource Finance, collectively, the **"Agents"**) and CapitalSource Bank, as lender (together with any and all affiliates, successors, agents or assignees to whom CapitalSource Bank or its affiliates, successors, agents or assignees has granted or assigned or may grant or assign certain or all of its rights in its capacity as Post-Petition Financing lender, individually or collectively, the **"DIP Lender"**), (ii) to grant the Agents, for the benefit of themselves as agents and DIP Lender, pursuant to section 364(c) and 364(d) of the Bankruptcy Code, first priority and junior security interests, as hereinafter set forth, in all of the Debtors' currently owned and after-acquired property to secure the Debtors' obligations under the Post-Petition Financing; and (iii) to grant the Agents, for the benefit of themselves as agents and DIP Lender, priority in payment with respect to the obligations incurred in connection with the Post-Petition Financing over any and all administrative expenses of the kinds specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 552 and 726 of the Bankruptcy Code, other than as described below; (b) authorizing the Debtors to use cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the **"Cash Collateral"**), pursuant to section 363(c) of the Bankruptcy Code and to provide adequate protection, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code; (c) scheduling a preliminary hearing (the **"Preliminary Hearing"**) on the Motion to consider entry of an Interim Order pursuant to Bankruptcy Rule 4001 authorizing the Debtors to borrow under the Post-Petition Financing the amounts set forth in and limited by the Approved Budgets (as defined in the Interim Order), upon the terms and conditions set forth in the Interim Order pending the Final Hearing referred to below; and (d) scheduling a final hearing (the **"Final Hearing"**) to consider entry of the Final Order authorizing on a final basis, inter alia, the Post-Petition Financing and use of the Cash Collateral. A copy of the proposed Interim Order is attached hereto as **Exhibit "B"**.

*DEL 86,340,608v1 9-20-10*

2.  The essential terms of the proposed use of Cash Collateral and Post-Petition Financing as reflected in the Interim Order are as follows:[2]

   (a)  *Maximum Borrowing Available on a Final Basis through October 22, 2010 - $3,631.983*

   (b)  *Interim Borrowing Limit through October 8, 2010 - $2,322,720*

   (c)  *Borrowing Conditions.*  DIP Lender's advances of the Post-Petition Financing shall be pursuant to the same terms as the Pre-Petition Loan Documents (as defined below) as modified by the Interim Order (the Pre-Petition Loan Documents as modified by the Interim Order shall hereinafter be referred to as the **"DIP Loan Documents"**), without the need for further execution or documentation.  The borrowing(s) made under the credit facility maintained under the DIP Loan Documents (the **"DIP Facility"**) and all other indebtedness and obligations incurred on or after the Petition Date with respect to loans, advances and any other indebtedness or obligations, contingent or absolute, pursuant to the Interim Order and the DIP Loan Documents which may now or from time to time hereafter be owing by the Debtors to DIP Lender (including principal, accrued and unpaid interest, and fees, costs and expenses, including without limitation attorneys' fees and expenses) are referred to herein as the **"DIP Indebtedness,"** and, together with the Pre-Petition Obligations (as defined herein), as the **"Indebtedness."**  The Debtors and DIP Lender may enter into nonmaterial amendments of or modifications to the DIP Loan Documents and without the need of further notice and hearing or order of this Court; provided, however, notice of such nonmaterial amendments or modifications to the DIP Loan Documents shall be given to the United States Trustee. Interim Order ¶2.

   (d)  *Interest Rate.*  The Pre-Petition Obligations shall bear interest at the applicable default rates set forth in the DIP Loan Documents and the Pre-Petition Loan Documents.  The DIP Indebtedness shall bear interest at the same default rate as in the Pre-Petition Loan Documents.  Interim Order ¶ 5.

   (e)  *Maturity* – October 22, 2010.

   (f)  *Termination.*  DIP Lender's agreement to provide the DIP Facility in accordance with the DIP Loan Documents and Original Lender's and Agents' consent to the use of the Cash Collateral shall immediately and automatically terminate (except as Agents, DIP Lender and/or Original Lender may otherwise agree in writing in their sole discretion), and all Indebtedness shall be immediately due and payable in cash upon the earliest to occur of any of the events set forth in paragraph 6 of the Interim Order.

---

[2]  In the event of any inconsistency between the terms of this paragraph 2 and the Interim Order and/or DIP Loan Documents, the provisions of the Interim Order shall govern and control.  All capitalized terms not otherwise defined herein shall have the meaning ascribed to said terms in the Interim Order.

(g)     *Limitations on Use of Funds.* Debtors may use Cash Collateral and the proceeds of the DIP Facility exclusively to pay for the expenses incurred by Debtors as provided for in the Approved Budgets. Debtors represent and warrant to the best of their knowledge that (a) the expenditures set forth in the Approved Budgets constitute all of Debtors' projected expenses during the period of the Approved Budgets, and (b) the Cash Collateral and the sums contemplated to be advanced by DIP Lender pursuant to the DIP Facility are sufficient to pay all of the expenses set forth in the Approved Budgets. Interim Order ¶18(b).

(h)     *Protections Afforded Under sections 363 and 364 of the Bankruptcy Code.* Interim Order ¶7, 8 and 10.

(i)     *Carve-Out.* As set forth more fully in paragraph 31 hereof, the Interim Order provides for (a) the payment of any unpaid fees payable pursuant to 28 U.S.C. § 1930 (including, without limitation, fees under 28 U.S.C. § 1930(a)(6)), (b) the fees due to the Clerk of the Court, (c) the actual fees and expenses incurred by professionals and the expenses of individual members of any Committee, officer and director tail insurance and wages, for the period prior to the occurrence of a Termination Date, and (d) payment of allowed professional fees and disbursements after the Termination Date (as defined in the Interim Order) to all professional persons retained prior to the Termination Date in an aggregate amount not to exceed $200,000. Interim Order ¶16.

(j)     *Objections by Parties In Interest.* Interim Order ¶27.

3.      The provisions described in Bankruptcy Rule 4001(b)(1)(B)(i)-(iv) are set forth at the following sections of the Interim Order:

(a)     *Name of Each Entity with Interest in Cash Collateral.* Interim Order ¶(Introduction).

(b)     *Purposes of Use of Cash Collateral.* Interim Order ¶18.

(c)     *Duration of Use of Cash Collateral.* Interim Order ¶18.

(d)     *Liens, Cash Payments, or Other Adequate Protection to Be Provided to Each Entity with Interest in Cash Collateral.* Interim Order ¶7-9.

4.      In addition, the provisions described in Bankruptcy Rule 4001(c)(1)(B)(i)- (xi) are set forth at the following sections of the Interim Order:

(a)     *Grant of Priority or a Lien on Property of the Estate.* Interim Order ¶7-10.

(b)     *Adequate Protection or Priority for a Claim that Arose Before the Commencement of the Case, Including the Granting of a Lien on Property of the Estate to Secure the Claim, or the Use of Property of the Estate or Credit*

*Obtained Under Section 364 to Make Cash Payments on Account of the Claim.* Interim Order ¶4, 8 and 9.

(c) *Determination of the Validity, Enforceability, Priority, or Amount of a Claim that Arose Before the Commencement of the Case, Subject to the Rights of a Creditors' Committee or Other Parties in Interest.* Interim Order ¶F, 25, 27.

(d) *Waiver or Modification of the Automatic Stay.* Interim Order ¶4, 15.

(e) *Release, Waiver, or Limitation on any Claim or Cause of Action Belonging to the Estate.* Interim Order ¶6, 12 and 25.

(f) *Indemnification of Any Entity.* Interim Order ¶ N/A.

(g) *Release, Waiver, or Limitation on Rights under Section 506(c) Under Final Order.* Interim Order ¶13.

(h) *Liens Granted on Claims Arising Under Chapter 5.* Interim Order ¶7,8.

## Status of the Case and Jurisdiction

5.      On September 20, 2010 (the "**Petition Date**"), the Debtors commenced these cases (the "**Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6.      The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      No request has been made for the appointment of a trustee or examiner, and a creditors' committee has not yet been appointed in these Cases.

8.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

9.      The statutory and legal predicates for the relief sought herein are sections 361, 363(c), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c) and (d) and 9014 and Local Rules 4001-2, 4001-3, 9013-1(f) and (g).

- 5 -

**Background**

10.     The Debtors are one of the largest operators in the high-end luxury destination club industry.  The Debtors provide club members and their families with flexible access to a portfolio of multi-million dollar club residences, exclusive member services and resort amenities. The Debtors operated prepetition 119 luxury club residences in various global destinations, including throughout the United States, Mexico, Central America, the Caribbean and Europe. The Debtors also provide their members with preferred access to four and five-star hotel properties and resorts.  The Debtors derive their revenue from the sale of one-time club membership fees, annual dues and additional use fees or other charges related to upgrades in exchange for access to their portfolio of properties throughout the world.  Currently, the Debtors serve approximately 1,200 club members.

## RELIEF REQUESTED

11.     The Debtors request that the Court authorize the Debtors to obtain senior secured, superpriority post-petition financing in the aggregate not to exceed $3,631,983 pursuant to the terms of this Motion, the DIP Loan Documents, and the DIP Orders.

12.     The proposed financing will be provided by the DIP Lender and will be, as set forth below, senior in priority to all secured claims except for the obligations under the Pre-Petition Loan Documents (defined below).  As such, the liens created under the DIP Loan Documents are priming liens with respect to liens currently held by Ultimate Resort Holdings, LLC and any other liens other than the Pre-Petition Liens (as defined below).

13.     Pending entry of the Final Order, the Debtors request that the Court authorize the Debtors, on an interim basis, to (i) borrow $2,322,720 pursuant to the terms of the Interim Order; (ii) use Cash Collateral as provided in the Interim Order; (iii) grant to the Agents, for the benefit of themselves as agents and DIP Lender, the liens and superpriority claims described herein;

- 6 -

(iv) provide adequate protection to Original Lender (as defined below), as described herein and in the Interim Order; (v) approve the proposed notice of the Final Hearing; and (vi) schedule the Final Hearing.

## Funding of the Debtors' Operations

**A.     The Pre-Petition Loan Documents**

14.     Prior to the Petition Date, certain loans and other financial accommodations were made available to the Debtors pursuant to that certain Consolidated Amended and Restated Loan and Security Agreement dated as of September 15, 2009 (as amended from time to time, the "**Pre-Petition Loan Agreement**") among the Debtors (each in their capacity as a Borrower or Guarantor, as applicable) Agents and CapitalSource Bank, as the lender (collectively, in such capacity, the "**Original Lender**") and to certain documents and/or instruments entered into in connection therewith to which Agents, Original Lender, the Debtors and affiliates of Debtors, are parties including, without limitation, the following: (i) Amended and Restated Payment and Performance Guaranty dated as of September 15, 2009; (ii) Guarantor Security Agreement dated as of September 15, 2009; (iii) Consolidated Amended and Restated Collateral Assignment of Property-Related Contracts dated as of September 15, 2009; (iv) Amended and Restated Trademark Security Agreement dated as of September 15, 2009; (v) each of the Assignments of Ownership Interests dated as of September 15, 2009 and listed on Schedule 22 to the Pre-Petition Loan Agreement; (vi) Control Agreement Concerning Deposit Accounts dated as of October 19, 2009; (vii) each mortgage, deed of trust or other security agreement executed by a Debtor in favor of the applicable Agent, for the benefit of themselves as Agents and the Original Lender, in connection with the Pre-Petition Loan Agreement; (viii) Subordination and Intercreditor Agreement dated as of October 29, 2009; (ix) Omnibus Reaffirmation of Loan Documents dated September 15, 2009; (x) Collateral Assignment of Contribution Agreement dated September 15,

- 7 -

2009; and (xi) Consolidated, Amended and Restated Hazardous Materials Indemnity Agreement dated as of September 15, 2009, and all other related documents (each as amended, supplemented or otherwise modified prior to the commencement of these Chapter 11 Cases, and all collateral and ancillary documents executed in connection therewith, collectively the "**Pre-Petition Loan Documents**"). Such documents have been filed with the Court and are available upon request. The Debtors initially defaulted under the Pre-Petition Loan Documents on June 5, 2010, and have been in default thereunder at all times since such date. As a result of Debtors' Defaults, interest is accruing at the Default Rate as of June 5, 2010 in accordance with Section 2.2(f)(iii) of the Pre-Petition Loan Agreement. The total amount of Default Rate interest due and owing as of the Petition Date is $1,085,022.27.

15.     Pursuant to the Pre-Petition Loan Documents, all obligations of the Debtors to Original Lender of any kind or nature under the Pre-Petition Loan Documents (the "**Pre-Petition Obligations**") are secured by a first priority security interest held by Agents, as applicable, for the benefit of themselves as agents and the Original Lender (the "**Pre-Petition Liens**") in substantially all of the Debtors' assets including, without limitation, and by way of general description only, equipment, inventory, goods, fixtures, general liabilities, accounts, accounts receivable, real property, deposit accounts (including without limitation bank accounts and all funds on deposit therein), the Debtors' rights in escrow accounts and to receive proceeds from previous sale transactions, instruments, chattel paper, general intangibles, tax refunds, contracts, letter of credit rights, intellectual property, commercial tort claims, if any, stock, documents of title, tangible and intangible personal and investment property, money, cash and all cash equivalents, and all cash held as cash collateral, books and records, all supporting obligations,

*DEL 86,340,608v1 9-20-10*

and the proceeds and products of all of the foregoing as more particularly included and described in the Pre-Petition Loan Documents (the "**Pre-Petition Collateral**").

**Debtors' Proposed Postpetition Financing Arrangement**

**A.      Need for Postpetition Financing**

16.      The Debtors have determined, with the assistance of their professionals, that they require post-petition financing. More specifically, given the Debtors' current financial condition, the Debtors are unable to operate by using only Cash Collateral and are unable to provide Agents and the Original Lender with adequate protection for the use of Cash Collateral. Moreover, the Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Financing on a post-petition basis is not otherwise available without the Debtors granting, pursuant to section 364(c)(i) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code and securing such indebtedness and obligations with the security interests in and the liens upon the property described below pursuant to sections 364(c)(2), (3) and 364(d) of the Bankruptcy Code.

**B.      Background of the Postpetition Financing Arrangement**

17.      In exploring its options, the Debtors recognized that the Pre-Petition Obligations owed to Original Lender are secured by virtually all of the Debtors' property, such that either (i) the Pre-Petition Liens would have to be primed to obtain post-petition financing; (ii) the post-petition lender would be required to refinance the obligations of Original Lender in full and provide additional loan availability; or (iii) the Debtors would have to find a post-petition lender willing to extend credit that would be junior to the Pre-Petition Liens.

18.      After consultation with their advisors, the Debtors have determined, in the exercise of their sound business judgment, that the proposed DIP Facility with the Agents and

DIP Lender is the best financing option available to the Debtors under the circumstances. The proposed terms of the DIP Facility are fair, reasonable, and adequate under the circumstances. First and foremost, the Debtors, with the assistance of their advisors, have made a concerted, good-faith effort to obtain credit on the most favorable terms that are available. However, as discussed above, no potential lender was willing to provide an adequate stand-alone financing facility unless Agents and Original Lender consented to the priming of the Pre-Petition Liens, which they would not do, or provide financing sufficient to repay obligations under the Pre-Petition Loan Documents in full and provide additional adequate liquidity sufficient to fund the Debtors' bankruptcy.

19.     Against this backdrop, the Debtors, with the assistance of their advisors, carefully evaluated the proposed financing structure from the Agents and DIP Lender, engaged in arms' length negotiations with the Agents and DIP Lender regarding the proposed terms, and worked with their various advisors to obtain the best possible terms from the Agents and DIP Lender. Eventually, the Debtors determined in their business judgment that the Agents' and DIP Lender's proposal was the best, fairest, and at the present time only proposal suited to the Debtors' needs and agreed to the terms of the DIP Facility. In particular, the Debtors concluded that adequate alternative financing on terms more favorable than those being provided by the Agents and DIP Lender under the DIP Facility is currently unavailable.

**C.      Provisions To Be Highlighted Pursuant to Local Rule 4001-2**

20.     The Debtors believe the following provisions of the Interim Order must be highlighted pursuant to Local Rule 4001-2:

> *(a)*     Binding the Estate to Validity, Perfection, or Amount of Secured Creditor's Prepetition Lien. Interim Order ¶E.

*(b)*     Waiver of Rights of Estate Under Section 506(c) as to the Final DIP Order. Interim Order ¶13 (preserving right to request a waiver of the provisions of section 506(c) of the Bankruptcy Code at Final DIP Hearing).

*(c)*     Granting Liens on Debtor's Chapter 5 Claims and Causes of Action subject to entry of a Final Order. Interim Order ¶7, 8.

*(d)*     Using Post-Petition Loans from Prepetition Secured Creditor to Pay Part or All of Secured Creditor's Prepetition Debt upon Entry of a Final Order. ¶4

21.     The provisions of the Interim Order were negotiated at arm's length and in good faith. The Interim Order enables the Debtors to obtain the financing necessary to maintain their operations and preserve and maximize the value of their estates.

**D.     Liens to Secure the DIP Indebtedness**

22.     As security for the DIP Indebtedness, the Agents, for the benefit of themselves as agents and DIP Lender, shall be granted the following security and liens (the **"DIP Facility Liens"**) in all currently owned or hereafter acquired property and assets of the Debtors of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, all cash, goods, accounts receivable, inventory, cash in advance deposits, general intangibles, goodwill, investment property (including, without limitation, ownership interests in corporations, partnerships, and limited liability companies), deposit accounts, real estate, intellectual property, machinery, leasehold interests, equipment, vehicles, trademarks, trade names, licenses, the Pre-Petition Collateral, causes of action including actions for preferences, fraudulent conveyances, and other avoidance power claims and any recoveries under sections 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code (collectively, **"Avoidance Actions"**) and actions and recoveries thereon against third parties, tax refund claims, commercial tort claims and insurance proceeds, and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing, the **"DIP Facility Collateral"**), subject only

- 11 -

to, in the event of the termination of the DIP Facility, the payment of the Carve-Out (as defined in paragraph 29):

(a) Pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected first priority senior security interest in the DIP Facility Collateral, whether existing on the Petition Date or thereafter acquired, that, as of the Petition Date, is not subject to valid, perfected and non-avoidable liens;

(b) Pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected security interest in and lien upon the DIP Facility Collateral, whether existing on the Petition Date or thereafter acquired, that is subject to valid, perfected and unavoidable liens in existence as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date, with a priority that relates back to a date prior to the Petition Date, as permitted by section 546(b) of the Bankruptcy Code (herein "**546(b) Liens**"), immediately junior in priority to such valid, perfected and unavoidable liens;

(c) Pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority senior priming lien (the "**Priming Liens**") on all of the DIP Facility Collateral, including the Pre-Petition Collateral, which shall be senior to all other security interests and liens in property of the Debtors' estates except for (i) Permitted Liens (as defined below), and (ii) the Pre-Petition Liens; and

(d) In addition, except to the extent otherwise expressly set forth in the Interim Order, or in a written instrument, agreement or other document executed by the Agents and DIP Lender and subject to paragraph 7 of the Interim Order, neither the Pre-Petition Liens nor the DIP Facility Liens shall be subject to subordination to any other liens, security interests or claims under section 510 of the Bankruptcy Code, or otherwise.

**E.      Use of Cash Collateral and Proposed Adequate Protection**

23.      In order to address their working capital needs and fund their reorganization efforts, the Debtors also require the use of Agents' and/or the Original Lender's cash collateral (the "**Cash Collateral**"). The use of Cash Collateral will provide the Debtors with the additional necessary capital with which to fund their bankruptcy.

24.      Agents and the Original Lenders have consented to the Debtors' use of Cash Collateral in the ordinary course of business in accordance with the Approved Budgets, subject

to the adequate protection liens and payments discussed below and the other terms and conditions set forth in the Interim Order.

25. Agents and the Original Lender requested and each is entitled, pursuant to sections 361, 363 and 552(b) of the Bankruptcy Code, to adequate protection of the Pre-Petition Collateral to the extent that there is a diminution in the value of such Pre-Petition Collateral from and after the Petition Date. As adequate protection for any such diminution in value, Agents, for the benefit of themselves as agents and the Original Lender, shall be granted pursuant to sections 361, 363, and 552 of the Bankruptcy Code, valid, binding, enforceable and perfected additional and replacement liens (the "**Adequate Protection Liens**") in all property of the Debtors' estates, including the DIP Facility Collateral, to the extent of any decrease in the value of the Pre-Petition Collateral occurring subsequent to the Petition Date, with such decrease in value to include decreases resulting from the Debtors' use (if any) of Cash Collateral, the depreciation, use, sale, loss, decline in value or market price of the Pre-Petition Collateral, or otherwise. The Adequate Protection Liens shall enjoy the same validity and extent as the Pre-Petition Liens. The Adequate Protection Liens are subject only to (i) existing liens and encumbrances that were senior to those of Agents as of the Filing Date under applicable non-bankruptcy law, and which are valid, binding, enforceable, perfected and non-avoidable liens existing in the Pre-Petition Collateral as of the Petition Date[3] (the "**Permitted Liens**"), other than the Pre-Petition Liens; and (ii) the Carve-Out (as defined in paragraph 16 of the Interim Order).

26. If, notwithstanding the provision of the Adequate Protection Liens, such Adequate Protection Liens do not provide adequate protection of Agents' and/or Original Lender's interests in the Pre-Petition Collateral, Agents and/or Original Lender shall (i) have a claim

---

[3] The Debtors represent and warrant that other than (i) Permitted Encumbrances and (ii) Liens for taxes and/or homeowners association assessments, there are no such liens or security interests, or if any such liens or security interests exist, such liens and security interests are set forth on **Exhibit "A"** hereto.

- 13 -

allowed under sections 507(a)(2) and 507(b) of the Bankruptcy Code (the "**507(b) Claim**"), and, except with respect to being subordinated to the Carve-Out, such 507(b) Claim shall be entitled to priority over every other claim allowable under such section 507(a)(2) of the Bankruptcy Code; and (ii) notwithstanding anything herein to the contrary, be entitled to seek further adequate protection of its interests and such further relief as is consistent therewith.

27.     In addition to the Adequate Protection Liens, the Debtors propose to grant and/or pay Agents and/or Original Lender the following, among other things, as adequate protection:

> *(a)*     repayment of the principal amount of the Pre-Petition Obligations in accordance with the DIP Orders; and

> *(b)*     payments in the amount of interest, fees, costs and expenses with respect to the Pre-Petition Obligations in accordance with the DIP Orders.

28.     The foregoing claims are to be granted and the payments are to be made to Agents and/or Original Lender because, among other things, the Debtors will continue to use the Cash Collateral and other Pre-Petition Collateral in the Debtors' ongoing operations.

**F.     Carve-Out**

29.     The DIP Facility Liens, the Superpriority Claims, 507(b) Claim and the Adequate Protection Liens are subordinate only to the following (the "**Carve-Out**"):  (a) the payment of any unpaid fees payable pursuant to 28 U.S.C. § 1930 (including, without limitation, fees under 28 U.S.C. § 1930(a)(6)), (b) the fees due to the Clerk of the Court, (c)(i) the actual fees and expenses incurred by the professionals retained by the Debtors (including any fees and expenses payable to CRG Partners Group LLC ("**CRG**") pursuant to that certain engagement letter dated August 10, 2010 between the Debtors and CRG, as amended by order (in acceptable form to the Agents, the DIP Lender and Original Lender, in their sole discretion) entered approving the Debtors' retention of CRG) (the engagement letter as amended, the ("**CRG Engagement Letter**", but excluding any success fee, which shall only be paid in accordance with the CRG

Engagement Letter), or any professionals retained by the Committee, retained by an order of the Court entered pursuant to sections 327 or 1103(b) of the Bankruptcy Code, and the expenses of individual members of any Committee, for the period prior to the occurrence of a Termination Date, provided they are within the amounts on a cumulative basis for any period covered by the Approved Budget and are subsequently allowed by the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code, (ii) the officer and director's tail insurance premium (as set forth in the Approved Budget); and (iii) wages and amounts due to employees for periods prior to the Termination Date as set forth in the Approved Budget (items collectively in clauses (a) through (c)(i) through (iii) above, collectively, the **"Pre Termination Date Carve Out"**).

30.    In addition to the Pre Termination Date Carve Out, the Adequate Protection Liens, the DIP Facility Liens, the Superpriority Claims and the 507(b) Claim shall also be subject to (a) the payment, following the occurrence of any Termination Date which is not waived by the Agents and DIP Lender, of allowed professional fees and disbursements incurred after such Termination Date by all professional persons retained in this proceeding, pursuant to sections 327, 328 or 1103(a) of the Bankruptcy Code, in an aggregate amount not to exceed $200,000 to the extent such amounts are allowed by the Court and not otherwise payable from any unused portion of any retainers or unused amounts for payments to professional persons set forth in the Approved Budgets (the **"Post Termination Date Carve-Out"**), and (b) any Court approved Expense Reimbursement due and owing to the Buyer (as defined in the Purchase Agreement as defined below) pursuant to the terms of that certain Asset Purchase Agreement between the Buyer and the Debtors dated September 20, 2010 (the **"Purchase Agreement"**), which Expense Reimbursement shall be paid to the Buyer (as defined in the Purchase Agreement) by the Debtors as and when due under the Purchase Agreement.    Upon the

- 15 -

occurrence of a Termination Date that is not waived by the Agents, DIP Lender and Original Lender, DIP Lender shall fund the Pre-Termination Date Carve-Out within seven (7) days after being provided with a notice or notices setting forth the amount of accrued and unpaid fees and costs allowable under the Approved Budget and this Order, together with supporting documentation for such amounts (the "**Pre-Termination Date Carve-Out Funding**"). The portion of the Pre-Termination Date Carve-Out Funding due to professionals will be funded directly to the professionals upon submission of the order approving the fees of such professionals. DIP Lender shall be under no obligation to fund the Post-Termination Date Carve-Out if there is available unencumbered cash in the estates at that time to the extent such unencumbered cash can be used to fund the items which would otherwise be paid by the Post Termination Date Carve Out. In the event no such funds are otherwise available, DIP Lender shall fund the Post-Termination Date Carve-Out upon being provided with notification of the unavailability of estate assets for such funding and an order entered by the Bankruptcy Court allowing the fees under sections 330 and 331 of the Bankruptcy Code. Subject to the foregoing, the rights of the professionals to the Pre-Termination Date Carve-Out, the Post-Termination Date Carve-Out, or such lesser amounts as may be allowed by the Bankruptcy Court, shall be senior to the rights of DIP Lender to such funds. Any Carve-Outs funded by DIP Lender shall be deemed advances under the DIP Facility.

## G.    Objections by Parties in Interest

31.    Except as set forth herein and in the Interim Order, all of the provisions of the Interim Order shall be final and binding on the Debtors (including, without limitation, their successors and assigns), the Debtors' shareholders, and all creditors and other parties in interest, including any Chapter 11 or Chapter 7 trustee hereinafter appointed. The Committee and any party-in-interest with requisite standing (other than the Debtors) shall have until the lesser of (i)

sixty (60) days of the entry of this Order or (ii) the date of the Sale Hearing, as defined in the Sale Motion (the "**Investigation Period**"), to file, on behalf of the Debtors' estates, and to serve upon counsel for the Agents, DIP Lender and Original Lender, an adversary complaint respecting (a) the claims, causes of actions and defenses released by the Debtors pursuant to ordering paragraph 25 above or (b) the validity, extent, priority, avoidability, or enforceability of the Pre-Petition Obligations, the Pre-Petition Liens in the Pre-Petition Collateral. In the event that no adversary complaint is filed with this Court by the Committee or party-in-interest and served upon counsel for the Agents, DIP Lender and Original Lender by 5:00 p.m. Eastern Time on the last day of the Investigation Period, the provisions of this Order including, without limitation, paragraph 25 and the Debtors' Stipulations in this Order shall become final and binding for all purposes and upon all parties.

## BASIS FOR RELIEF REQUESTED

### The DIP Facility Should Be Authorized

32. Approval of the DIP Facility will provide the Debtors with immediate and ongoing access to borrowing availability to fund their bankruptcy cases and to proceed with the Auction. The Debtors need access to the DIP Facility in order to preserve the value of the Assets and to maximize value for their creditors. Accordingly, the timely approval of the relief requested herein is imperative.

33. Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(I) of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt (a) with priority over any and all administrative expenses, as specified in section 503(b) or 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that

is subject to a lien.  11 U.S.C. § 364.  The Debtors propose to obtain the financing set forth in the DIP Orders and the DIP Loan Documents by providing, inter alia, superpriority claims, security interests, and liens pursuant to section 364(c)(l), (2), (3) and section 364(d) of the Bankruptcy Code.

34.     The Debtors' liquidity needs can be satisfied only if the Debtors are immediately authorized to borrow under the DIP Facility and to use such proceeds to fund operations.  The Debtors have been unable to procure sufficient financing in the form of unsecured credit allowable under section 503(b)(l), as an administrative expense under section 364(a) or (b), or in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(l).  The Debtors have not been able to obtain post-petition financing or other financial accommodations from any alternative prospective lender or group of lenders on more favorable terms and conditions than those for which approval is sought herein.

35.     Bankruptcy courts grant a debtor considerable deference in acting in accordance with its business judgment.  *See, e.g., Bray v. Shenandoah  Fed. Say. & Loan Assn.  (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dept Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); see also In re Funding Sys. Asset Mgmt. Corp., 72 B.R. 87 (Bankr. W.D. Pa. 1987); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod.* Co., 47 B.R. 444, 449 (D. Colo. 1985).

DEL 86,340,608v1 9-20-10

36.     Furthermore, section 364(d) does not require that a debtor seek alternative financing from every possible lender; rather, the debtor simply must demonstrate sufficient efforts to obtain financing without the need to grant a senior lien. *In re Snowshoe Co.*, 789 F.2 1085, 1088 (4th Cir. 1986) (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re 495 Central Park Ave, Co.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (debtor testified to numerous failed attempts to procure financing from various sources, explaining that "most lend money only in return for a senior secured position"); *In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991 (debtor adequately established that some degree of priming of loan was necessary if debtor were to obtain funding).

37.     Substantially all of the Debtors' assets are encumbered and the Debtors have been unable to procure the required funding absent granting the proposed superpriority claims and liens. The Debtors submit that the circumstances of this case require the Debtors to obtain financing pursuant to section 364(c) and section 364(d) of the Bankruptcy Code and, accordingly, the DIP Orders and the DIP Loan Documents reflect the exercise of their sound business judgment.

38.     The terms and conditions of the DIP Loan Documents are fair and reasonable, and were negotiated by well-represented, independent parties in good faith and at arms' length. Accordingly, the Agents and DIP Lender and all obligations incurred under the DIP Loan Documents should be accorded the benefits of section 364(e) of the Bankruptcy Code.

### The Use of Cash Collateral Should Be Approved

39.     Under section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use ... in accordance with the provisions

of this section." 11 U.S.C. § 363(c)(2). The Debtors require the use of Cash Collateral to fund their bankruptcy cases and to proceed with the Auction. Indeed, absent such relief, the Debtors will be unable to preserve the value of the Assets, with damaging consequences for the Debtors and their estates and creditors. The interests of Agents and Original Lender in the Debtors' Cash Collateral will be protected by the adequate protection set forth above. Agents and Original Lender have consented to the use of the Cash Collateral on the terms set forth herein and in the Order. Accordingly, the Debtors' request to use Cash Collateral in the operation of their businesses and administration of the chapter 11 cases should be approved.

## Section 364(e) Protections

40.     The terms and conditions of the DIP Orders are fair and reasonable, and were negotiated by well-represented, independent parties in good faith and at arms' length. Accordingly, Agents, DIP Lender and Original Lender and all obligations incurred under the DIP Orders should be accorded the benefits of section 364(e) of the Bankruptcy Code.

## The Proposed Adequate Protection Should Be Authorized

41.     Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by [a debtor in possession], the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. What constitutes adequate protection must be decided on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral

DEL 86,340,608v1 9-20-10

during the period of use. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citation omitted).

42.     Agents and Original Lender have agreed to the Debtors' use of Cash Collateral and the Debtors' entry into the DIP Loan Documents in consideration for the adequate protection provided under the DIP Loan Documents. Accordingly, the adequate protection proposed herein to protect Agents' and Original Lender's interest in the Pre-Petition Collateral is fair and reasonable and sufficient to satisfy the requirements of sections 363(c)(2) and (e) of the Bankruptcy Code.

### The Automatic Stay Should Be Modified on a Limited Basis

43.     The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtors to (i) grant the security interests, liens, and superpriority claims described above with respect to the Agents, DIP Lender and Original Lender, as the case may be, and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; (ii) permit the Agents, DIP Lender and/or Original Lender to exercise, upon the occurrence of and during the continuance of an event of default, all rights and remedies under the DIP Loan Documents; and (iii) implement the terms of the proposed DIP Orders.

44.     Stay modifications of this kind are ordinary and standard features of post-petition debtor financing facilities and, in the Debtors' business judgment, are reasonable and fair under the present circumstances.

### Interim Approval Should Be Granted

45.     Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than fourteen (14)

days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

46. Pursuant to Bankruptcy Rules 4001(b) and (c), the Debtors request that the Court conduct an expedited preliminary hearing on this motion and (a) authorize the Debtors to use Cash Collateral and borrow under the DIP Facility on an interim basis, pending entry of a final order, in order to avoid immediate and irreparable harm and prejudice to the Debtors' estates and all parties in interest, and (b) schedule a hearing to consider entry of a final order.

47. The Debtors have an urgent and immediate need for cash to continue to operate. Currently, the Debtors do not have sufficient funds with which to fund their bankruptcy and protect and maintain the value of the Assets. Absent authorization from the Court to obtain secured credit, as requested, on an interim basis pending a final hearing on the motion, the Debtors will be immediately and irreparably harmed. The interim relief requested is critical to facilitating the Debtors' reorganization efforts.

48. The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

49. To successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay under Bankruptcy Rule 6004(h).

## NOTICE

50. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel to the Debtors'

prepetition secured lenders; (c) counsel to the Debtors' post-petition secured lenders; (d) creditors holding the twenty (20) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (e) the Office of the United States Attorney General for the District of Delaware; (f) the Internal Revenue Service; and (g) the Securities and Exchange Commission. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

51.     No prior motion for the relief requested herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the proposed Interim Order, substantially in the form attached hereto as Exhibit B: (A) authorizing the Debtors to obtain the Post-Petition Financing; (B) scheduling the Final Hearing to consider entry of the Final Order authorizing on a final basis, inter alia, the Post-Petition Financing and use of the Cash Collateral; and (C) ) granting related relief.

*DEL 86,340,608v1 9-20-10*

Dated: September 20, 2010          GREENBERG TRAURIG, LLP


                                   _____
                                   Scott D. Cousins (DE Bar No 3079)
                                   Matthew L. Hinker (DE Bar No 5348)
                                   The Nemours Building
                                   1007 North Orange Street, Suite 1200
                                   Wilmington, Delaware 19801
                                   Telephone: (302) 661-7000
                                   Facsimile: (302) 661-7360
                                   Email:     cousinss@gtlaw.com
                                              hinkerm@gtlaw.com

                                   -and-

                                   Nancy A. Mitchell
                                   200 Park Avenue
                                   New York, New York  10166
                                   Telephone: (212) 801-9200
                                   Facsimile: (212) 801-6400
                                   Email:     mitchelln@gtlaw.com

                                   Proposed Counsel for the Debtors
                                     and Debtors-in-Possession