# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ULTIMATE ESCAPES HOLDINGS, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 10-12915 (BLS)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 14, 178** |

## REPLY OF CAPITALSOURCE TO TRUMP HOTEL'S LIMITED OBJECTION TO THE DEBTORS' SALE MOTION

CapitalSource[1] is the Debtors' pre- and post-petition secured lender, and pursuant to Debtors' pending motion to sell substantially all of their assets under section 363 of the Bankruptcy Code (Dkt. Entry No. 14, the "**Sale Motion**"), is the stalking horse bidder for those assets. CapitalSource, through its undersigned counsel, hereby replies to the limited objection (Dkt. Entry No. 178, the "**Objection**") filed by Trump International Management Corporation and Trump International Hotel and Tower Condominium (collectively, "**Trump Hotel**"). In support of this reply, CapitalSource respectfully represents as follows:

## INTRODUCTION

Trump Hotel has raised a bare objection to the Debtors' Sale Motion in an attempt to ensure that its claim for past-due common charges is paid ahead of other unsecured creditors. Even assuming facts in favor of Trump Hotel, well-established law holds that the sale of the Debtors' assets under section 363 of the Bankruptcy Code will be free and clear of Trump

---

[1] CapitalSource Finance LLC, as administrative, payment and collateral agent ("**CapitalSource Finance**"), CapitalSource Bahamas LLC, as collateral agent ("**CapitalSource Bahamas**" and together with CapitalSource Finance, collectively, the "**Agents**") and CapitalSource Bank, as lender (together with any and all affiliates, successors, agents or assignees to whom CapitalSource Bank or its affiliates, successors, agents or assignees has granted or assigned or may grant or assign certain or all of its rights in its capacity as Post-Petition Financing lender, individually or collectively, the "**DIP Lender**" and with the Agents, "**CapitalSource**").

Hotel's purported security interests. Tellingly, Trump Hotel cites no law in support of its Objection, and does not even allege the fundamental facts necessary to support its argument—namely, the existence of a properly recorded lien as required by applicable New York state law.

## ARGUMENT

I.   **The Debtors May Sell the Trump Hotel Condominium Units Free and Clear of the Trump Hotel's Purported Security Interest**

   A.   **Both the New York State Condominium Act and the Governing By-Laws Dictate that Trump Hotel's Purported Lien is Junior to that of CapitalSource**

   1.   Both the controlling law and Trump Hotel's own governing documents provide that any lien Trump Hotel may have for unpaid common charges is junior to that of CapitalSource's properly perfected, senior mortgage.

   2.   The law governing the priority of liens in this dispute is New York's Condominium Act of 1964. N.Y. REAL PROP. LAW §§ 339-d, *et seq.* (the "**Condominium Act**") Notably, the Condominium Act grants condominium boards with a statutory lien for the unpaid "common charges" of a condominium unit:

> The board of managers . . . shall have a lien on each unit for the unpaid common charges thereof, together with interest thereon, prior to all other liens except only (i) liens for taxes on the unit in favor of any assessing unit, school district, special district, county or other taxing unit, (ii) all sums unpaid on a first mortgage of record . . . . Upon the sale or conveyance of a unit, such unpaid common charges shall be paid out of the sale proceeds or by the grantee.

N.Y. REAL PROP. LAW § 339-z (attached hereto as **Exhibit A**). It is unmistakably clear on the face of the Condominium Act that any lien it provides for is junior to the first mortgage of record—in this case, CapitalSource's mortgage. Despite Trump Hotel's assertions that it "has a

2

first priority lien on the Hotel Units for unpaid Common Charges," the Condominium Act holds otherwise. (Trump Hotel's Opp'n ¶ 13).

3. Not only is the statue clear on its face, but the highest New York state court also has interpreted the Condominium Act to give a greater priority to the first mortgage of record. *See Bankers Trust Co. v. Board of Managers of Park 900 Condominium*, 616 N.E.2d 848, 849-50 (N.Y. 1993) (holding that the first mortgage had priority over the condominium board's statutory lien and thus the statutory lien was extinguished in the first mortgage's foreclosure sale). There is therefore no doubt that any lien arising out of both the unpaid common charges and hotel services of Trump Hotel is junior to CapitalSource's mortgage. *See Dime Savings Bank of New York F.S.B. v. Pesce*, 636 N.Y.S.2d 747, 750 (N.Y. App. Div. 1995) (holding that the language of the Condominium Act's use of "common charges" was broad enough to subordinate both the condominium's common charges and the additional ground lease rent).

4. Additionally, the Trump Hotel By-Laws provide similar authority for the subordination of the unpaid common charges lien to CapitalSource's first priority mortgage. As quoted by Trump Hotel in its Objection:

> Except to the extent prohibited by law, the Board, on behalf of all Unit Owners, shall have a **lien for Common Charges unpaid by any Unit Owner**, together with interest thereon, on all Units owned by such Unit Owner, in proportion to their respective Common Interests. In addition, to the extent permitted by law, the Board, on behalf of the Hotel Management Company, shall have a **lien on each Hotel Unit enrolled in the Hotel Operation Program for unpaid amounts**, together with interest and costs of collection, charged against such Unit and not paid or recouped from occupancy charges within thirty (30) days after the date when due. **Such liens shall be subordinate only to liens for real estate taxes and prior recorded Permitted Mortgages on such Unit.**

(Trump Hotel's Opp'n ¶ 11) (emphasis in original).

5. As Trump Hotel emphasizes and apparently concedes, the By-Laws permit the granting of a lien on condominium property for unpaid common charges, "subordinate only to liens for real estate taxes and prior recorded Permitted Mortgages on such Unit." (Trump Hotel's Opp'n ¶ 11). The By-Laws substantially track the language of the Condominium Act, and thus, it too provides for the seniority of CapitalSource's mortgage.

B. **Section 363(f)(5) of the Bankruptcy Code Permits Sales Free and Clear of Junior Interests in a State Foreclosure Sale**

6. Assuming that Trump Hotel has a valid lien on the condominium units *junior* to that of CapitalSource's mortgage, section 363(f)(5) of the Bankruptcy Code allows the Debtors to sell such units free and clear of Trump Hotel's junior lien in a sale under section 363(b) of the Bankruptcy Code.

7. Section 363(f)(5) allows the Debtors to sell assets "free and clear of any interest in such property of an entity other than the estate" if "such entity could be compelled, in a legal or equitable proceeding to accept a money satisfaction of such interest." As the bankruptcy court in *In re Jolan, Inc.* held, a state foreclosure sale constitutes a "legal and equitable proceeding[] . . . in which a junior lienholder could be compelled to accept a money satisfaction" sufficient to permit a sale free and clear of interests. *In re Jolan, Inc.*, 403 B.R. 866, 869 (Bankr. W.D. Wash. 2009). The court further added, "[J]udicial and nonjudicial foreclosures . . . operate to clear junior lienholders' interests, and their liens attach to proceeds in excess of the costs of sale and the obligation or judgment foreclosed." *Id.* at 870. The *Jolan* court concluded, "363(f)(5) here permits a sale free and clear of liens, with the liens attaching to the proceeds, notwithstanding that those proceeds may be insufficient to pay all liens." *Id.*

8. As is the case with *Jolan*, a foreclosure by a senior mortgagee under New York law would similarly operate to compel a junior lien to accept a monetary satisfaction under

section 363(f)(5). *See Bankers Trust*, 616 N.E.2d at 850 (describing New York Law, "The first mortgage foreclosure sale, except to the extent that there are proceeds in excess of the first mortgage, would extinguish all prior liens, i.e., the Board's statutory lien, and vest full title in the grantee."). Because condominium liens can be extinguished in a hypothetical foreclosure sale by CapitalSource, the Debtors may sell, under section 363(f)(5), the condominium units free and clear of any liens Trump Hotel may have against the properties. Any of Trump Hotel's liens will attach to the proceeds of the sale, to the extent that the proceeds exceed CapitalSource's senior mortgage.

## II. Trump Hotel Has Not Even Alleged the Existence of a Properly Recorded Lien, as Required by the Condominium Act

9. The preceding argument assumes the presence of a valid, enforceable condominium lien that was effective as of the Debtors' petition date. In fact, Trump Hotel's suspiciously bare Objection calls that assumption into question. New York Law specifically requires that in order for a lien for condominium assessments to become effective, a condominium board must *record* the existence of its lien.

> The lien provided for in the immediately preceding section shall be effective from and after the filing in the office of the recording officer in which the declaration is filed . . . .

N.Y. REAL PROP. LAW § 339-aa (attached hereto as **Exhibit B**). Indeed, New York courts have held that "a lien [for unpaid common charges] does not become effective until a verified notice of lien is filed in the office of the appropriate recording officer." *Mortgage Elec. Registration Systems, Inc. v. Levin*, 882 N.Y.S.2d 183, 184 (N.Y. App. Div. 2009). Where a condominium board fails to record its lien, it is ineligible to receive its share of proceeds arising out of a foreclosure sale surplus. *Id.*

10. Nowhere in Trump Hotel's Objection has it even made the bare allegation of a properly recorded and perfected lien. Trump Hotel instead makes an incoherent leap from the authority for such a lien in the By-Laws to the existence of a valid, enforceable lien. (Trump Hotel's Opp'n ¶ 13). Without any allegation, let alone proof, of a recorded condominium lien, Trump Hotel's belief of a lien is in contravention of New York state law.

11. Furthermore, the Condominium Act explicitly states that the effective date of the lien is the date that the condominium board's notice of lien is recorded. Trump Hotel may argue its lien's validity backdates to the recording of the condominium declaration (as may be the case in other jurisdictions). However, New York law is clear that the effective date of any condominium lien is the recording date of the lien, not the date that the declarations were recorded. *See* N.Y. REAL PROP. LAW § 339-aa.

## CONCLUSION

12. Trump Hotels has not established the existence of an enforceable lien under New York state law. However, even if it did, the Debtors have full authority under the Bankruptcy Code to sell the Trump Hotel units free and clear of any such liens held by Trump Hotel. For the foregoing reasons, this Court should overrule Trump Hotel's Objection.

Dated: October 19, 2010            CONNOLLY BOVE LODGE & HUTZ LLP

_____
Jeffrey C. Wisler (#2795)
Marc J. Phillips (#4445)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
Tel: (302) 888-6258
Fax: (302) 658-0380
E-mail: jwisler@cblh.com
        mphillips@cblh.com

and

PATTON BOGGS LLP

Michael P. Richman
Mark A. Salzberg
1185 Avenue of the Americas
30th Floor
New York, NY 10036
Tel: (646) 557-5100
Fax: (646) 557-5101
E-mail:mrichman@pattonboggs.com
      msalzberg@pattonboggs.com

*Counsel for CapitalSource*

#925946