IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ULTIMATE ESCAPES HOLDINGS, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 10-12915 (BLS)<br><br>(Jointly Administered)<br><br>Hearing Date: August 24, 2011 at 11:30 a.m. (EST)<br>Objection Deadline: August 17, 2011 at 4:00 p.m. (EST) |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 363 AND 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR APPROVAL OF THE SETTLEMENT AGREEMENT BETWEEN THE ULTIMATE ESCAPES HOLDINGS, LLC, PRIVATE ESCAPES PLATINUM LUCIGNANO, LLC AND GEORGE THOMAS BAKER

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby move the Court (the "**Motion**"), pursuant to sections 363 and 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order approving a settlement agreement (the "**Settlement Agreement**") between Ultimate Escapes Holdings, LLC, one of the Debtors ("**UEH**"), Private Escapes Platinum Lucignano, LLC ("**PE-Lucignano**") and George Thomas Baker ("**GTB**" together with UEH and PE-Lucignano, the "**Parties**"). In support of the Motion, the Debtors state as follows:

### Status of the Case and Jurisdiction

1. On September 20, 2010 and September 23, 2010 (the "**Petition Date**"), the Debtors commenced these cases (the "**Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors have continued in possession of their properties and are operating and managing their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner. On September 30, 2010, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**") in these Cases.

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

A. **General.**

6. The Debtors were one of the largest operators in the high-end luxury destination club industry. The Debtors provided club members and their families with flexible access to a portfolio of multi-million dollar club residences, exclusive member services and resort amenities. The Debtors operated prepetition over 119 luxury club residences in various global destinations, including throughout the United States, Mexico, Central America, the Caribbean and Europe. The Debtors also provided their members with preferred access to four and five-star hotel properties and resorts. The Debtors derived their revenue from the sale of one-time club membership fees, annual dues and additional use fees or other charges related to upgrades in exchange for access to their portfolio of properties throughout the world. The Debtors served approximately 1,200 club members.

B. **The Settlement Agreement.**

7. PE-Lucignano and GTB entered into that certain loan agreement dated on or about August 3, 2007 (the "**Loan Agreement**") in the original principal amount of $1,300,000.000.

8. PE-Lucignano owns that certain real property and improvements commonly known as "Rigo Salcio," (hereinafter referred to as the "**Property**"), the legal description of which is attached to the Settlement Agreement as Exhibit A upon which GTB holds a first mortgage lien (the "**Mortgage**").

9. UEH is the sole member and owns 100% of the issued membership interests of PE-Lucignano.

10. PE-Lucignano desires to sell and GTB desires to buy the Property, subject to the terms and conditions set forth in the Settlement Agreement. A copy of the preliminary purchase and sale agreement is attached to the Settlement Agreement as Exhibit B (the "**Preliminary P&S Agreement**") and copy of the Special Power of Attorney is attached to the Settlement Agreement as Exhibit C.

11. The debt due under the Loan Agreement to GTB was substantially in default prior to the filing of the Bankruptcy Case, and remains in default with no adequate assurance of payment or post-petition payments of any kind having been made to GTB.

12. The Parties desire to settle and resolve fully and finally any and all possible legal claims they may have against one another, without litigation, and without admission of liability on either side in accordance with the Settlement Agreement. A copy of the Settlement Agreement is attached hereto as **Exhibit A**.

13. The salient terms of the Settlement Agreement are as follows:[1]

In consideration of the sum of ten dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned do hereby agree as follows:

**SETTLEMENT**: PE-Lucignano, in satisfaction of the outstanding mortgage indebtedness due pursuant to the Loan Agreement, Mortgage and/or Promissory Note, owed by PE-Lucignano or any of its subsidiaries or affiliates to GTB (i.e. $1,490,125.00 or €1,078,890.67) and payment by GTB to PE-Lucignano in the amount of $5,000.00 (collectively the "**Purchase Price**"), PE-Lucignano agrees to sell and/or cause its applicable subsidiaries to sell all right, title and interest to the Property to GTB in accordance herewith.

The sale of the Property to GTB is an absolute conveyance of the Property in consideration of the Purchase Price and is not intended as additional security for the mortgage loan in favor of GTB. Also, it is the intention of the parties that there not be a merger of the fee with the Mortgage lien so that the Mortgage lien is preserved and remains in favor of GTB, as the mortgagee and shall not be effected until the sale of the Property to GTB has been consummated and the Property conveyed to GTB in accordance with Italian law. In the event, the sale of the Property does not close as set forth in the Preliminary P&S Agreement, i.e. by means of the execution in Italy in front of an Italian Notary of the deed of sale and any related formalities required by Italian law, the Mortgage shall remain upon the Property and GTB shall retain all rights and remedies incident thereto, including but not limited to, collecting the outstanding principal, interest, late payments, fees and all other charges provided for in the Loan Agreement, Mortgage and Promissory Note. GTB shall also retain the right to initiate foreclosure proceedings in a court of competent jurisdiction in the event the closing contemplated by the Settlement Agreement does not timely occur. This is a material term to the Settlement Agreement and shall survive the Settlement Agreement if terminated or cancelled. PE-Lucignano, UEH and GTB shall execute any further documents necessary or as requested by any Italian Notary public or other official to effectuate the purpose of the Settlement Agreement, with Bankruptcy Court approval, if necessary, for the sale of the Property. Upon receipt of the Settlement Order, defined *infra*, the Purchase Price shall be paid to PE-Lucignano in accordance with the P&S Agreement and the closing shall take place.

**BANKRUPTCY COURT REQUIRED APPROVAL**: The Parties agree and acknowledge that the Settlement Agreement is expressly subject to the approval of the United States Bankruptcy Court for the District of Delaware and further is subject to the consent of the Official Committee of Unsecured Creditors. UEH

---

[1] Capitalized terms not otherwise defined herein shall be given the meaning ascribed to them in the Settlement Agreement

agrees to seek the approval of the Committee and file a motion seeking such approval of the Court within ten (10) days of the effective date hereof. Upon the Court's approval of the Settlement Agreement and written notification to counsel for GTB via electronic mail c/o Albert J. Vitto III, Esq. (vitto@slpalaw.com) of the entry of the Bankruptcy Order (the "**Settlement Order**") approving the Settlement Agreement, GTB shall present all necessary documents to the Italian Notary to effectuate the transfer of title.

CLOSING IN FRONT OF AN ITALIAN NOTARY. Notwithstanding the foregoing in Section 2 and Section 3 of the Settlement Agreement, as a condition precedent to GTB purchasing the Property, PE-Lucignano agrees to sign both the proposed Preliminary Purchase-Sale Agreement, which sets forth the general terms and conditions of the eventual sale of the property, and the deed to be executed in Italy in front of an Italian Notary transferring title to the Property, the final version of which will be prepared by the Italian Notary with all of the technical annexes required by Italian law and necessary formalities, including those required so that such deed can be properly registered with the competent Italian a Estate Registries. In the event such documents cannot be secured timely, or the final deed transferring title to the property is not executed in Italy in front of an Italian notary regardless of the reason, then the Mortgage shall remain upon the Property and GTB shall retain all rights and remedies incident thereto.

**REPRESENTATIONS AND WARRANTIES.** PE-Lucignano and UEH represent and warrant that: (a) PE-Lucignano, owns good title to the Property and has the power to convey the same hereunder, free and clear of liens except the Mortgage held by GTB, pursuant to the Settlement Order of the Bankruptcy Court approving the Settlement Agreement; (b) subject to issuance of the Settlement Order, PE-Lucignano and UEH have the power and authority to enter into and perform the Settlement Agreement; and (c) any improvements made to the Property were done by licensed contractors with all necessary permits required by Italian law. Except as expressly set forth in the Settlement Agreement, and/or as required under Italian law at the time of the execution of the deed in front of the Italian Notary transferring title to the property, neither PE-Lucignano, UEH nor any of its subsidiaries or affiliates make any representations or warranties, either express or implied, with respect to the condition and/or state of repair of the Property (including, without limitation, the status of any environmental issues relative to the Property). The sale of the Property shall be on an "as-is," where-is" basis.

**MUTUAL RELEASE:** PE-Lucignano; UEH; and GTB, and each of their respective successors, assigns, affiliates, agents, partners, sureties, attorneys, accountants, and other representatives, hereby fully releases, acquits and forever discharges each other and their respective successors, assigns, affiliates, agents, officers, directors, shareholders, employees, partners, sureties, attorneys, accountants, and other representatives, from any and all claims, demands, damages, debts, commissions, obligations, rights, controversies, warranties, guarantees, contracts, agreements, promises, rights, costs, expenses, accounts,

attorney fees, causes of action, and suits or liabilities of any kind whatsoever which each may now have or ever did have, whether known or unknown, whether foreseen or unforeseen, directly or indirectly, against each other and any of its affiliates and/or related companies upon the deed to the Property being executed in front of an Italian Notary and title to the Property being transferred to GTB. It is understood and agreed that this release does not apply to claims for breach of the Settlement Agreement.

A full recitation of the terms and conditions of the Settlement Agreement is contained in the Settlement Agreement. To the extent the description in this Motion of any provision in the Settlement Agreement conflicts with the terms of the Settlement Agreement, the terms of the Settlement Agreement shall govern.

### Relief Requested

14. By this Motion, the Debtors seek the entry of an order pursuant to section 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing and approving (a) the Settlement Agreement and (b) the consummation of the transactions contemplated thereby, including, but not limited to the compromises, settlements, payments and releases contemplated by the Settlement Agreement, and (ii) granting such other and further relief as may be just and proper.

### Basis for Relief

15. Bankruptcy Code section 105(a) provides that, "[t]he court may issue and order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

16. Section 363(b)(1) provides that the trustee "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 is the statutory basis governing settlement agreements. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 & n.2 (3d Cir. 1996).

17. Bankruptcy Rule 9019, which governs the approval of compromises and

settlements, provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). A starting point in analyzing any proposed settlement agreement is the general policy of encouraging settlements and favoring compromises. *See In re Martin*, 91 F.3d at 394. The standard by which courts evaluate a proposed compromise and settlement are well established. The United States District Court for the District of Delaware "has described the ultimate inquiry to be 'whether the compromise is fair, reasonable, and in the interest of the estate.'" *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (Bankr. D. Del 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).

18. The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). Under the well-established standard for consideration of the merits of a settlement, in determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296; *In re Key3Media Group, Inc.*, 336 B.R. 87, 92-93 (Bankr. D. Del. 2005).

19. When considering whether a proposed settlement is fair, reasonable, and in the best interests of the estate and falls within the "range of reasonableness," the Court should consider four principal factors: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense;

inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Martin*, 91 F.3d at 393; *In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002); *In re World Health Alternatives, Inc.*, 344 B.R. at 296. These factors continue to be applied by courts in this Circuit. *See, e.g., Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006), *In re RNI Wind Down Corp.*, 2007 WL 949647, *4 (Bankr. D. Del. March 29, 2007). These factors seek to balance the probable benefit and potential cost of pursuing a claim or defense against the costs of the proposed settlement. For the reasons set forth below, the Debtors respectfully submit that consideration of these factors supports approval of the Motion.

20. In examining those factors, the court should not substitute its judgment for that of a debtor. *See In re Neshaminy Office Building Associates*, 62 B.R. 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986). The law is clear that the threshold for approving a settlement is not high. All that is required is that the settlement exceed "the lowest point in the range of reasonableness." *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) (*quoting Official Unsecured Creditors' Comm. of Penn. Truck Lines, Inc. v. Pa. Truck Lines, Inc. (In re Penn. Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D. Pa. 1992)).

21. As an ancillary matter, "because the bankruptcy judge is uniquely situated to consider the equities and reasonableness of a particular compromise, approval or denial of a compromise will not be disturbed on appeal absent a clear abuse of discretion." *Neshaminy Office Building Assoc.*, 62 B.R. at 803 (*citing, In re Patel*, 43 B.R. 500, 505 (Bankr. N.D. Ill. 1984)).

22. In this case, consideration of these factors clearly supports approval of this

Motion. As set forth in the Settlement agreement, the Settlement Agreement provides for a comprehensive resolution of claims related to the Property. Specifically, the proposed Settlement Agreement provides for the effective disposition of a Property that the Debtors have little to no equity in which is located in a foreign jurisdiction and has the potential to continue to incur costs for, among other things, maintenance, insurance and taxes; and further has the potential to subject the estate to liability. The Settlement agreement avoids these continued costs and also avoids the attendant risks associated with maintaining the Property. Given these facts, the Parties submit that the Settlement Agreement represents a fair and reasonable resolution of the dispute.

23. The Debtors believe that they have properly exercised their business judgment in the negotiation and execution of the Settlement Agreement, and that the proposed Settlement Agreement falls well within the range of reasonableness required for approval of a settlement, and that the Settlement Agreement therefore is in the best interests of the Debtors and their creditors. The Parties therefore request that this Court approve the Settlement Agreement in all respects.

24. Finally, to the extent Bankruptcy Rule 6004 applies, the Debtors request that this Court order that the stay provided in Bankruptcy Rule 6004(h) shall not apply to the order granting this Motion and that any order be effective immediately upon entry on the Court's docket.

## Notice

25. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) CapitalSource; (c) the Committee; (d) GTB, or his counsel; and (e) those parties requesting notice pursuant to Rule

2002-1(b) of the Local Rules for the United States Bankruptcy Court for the District of Delaware. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

26. No prior request for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the Motion and such other and further relief as is just.

Dated: August 3, 2011

GREENBERG TRAURIG, LLP

*/s/ Scott D. Cousins*

Scott D. Cousins (DE Bar No 3079)
Sandra G. M. Selzer (DE Bar No 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: cousinss@gtlaw.com
       selzers@gtlaw.com

-and-

Nancy A. Mitchell
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mitchelln@gtlaw.com

Counsel for the Debtors and Debtors-in-Possession